20-1997 Segraves against Lycoming County District Attorney. May it please the court, if I might make an opening comment, Your Honor? Yes. May it please the court, I'm Adrian Rowe and I'm here on behalf of the Duquesne University Federal Litigation Clinic. We greatly appreciate the opportunity, of course, to present oral argument to the court. Today, Kane Spitak, a student at Duquesne Law School who just completed her second year, will be presenting oral argument. I should just note that in the courtroom today are also Nicole Zelich and Allison McKenzie, who participated in the drafting of this brief, or brief and the reply brief. So with that, thank you very much. Great, thank you. I'm going to go on mute and stop video per the instructions I received. I'll be listening, of course. Ms. Spitak, did you wish to reserve any time for rebuttal? Yes, Your Honor. At this time, I would like to reserve two minutes for rebuttal. Okay. May it please the court, today we ask this honorable court to reverse the erroneous decision of the district court and award Seagraves a new trial. Our case today turns solely on the second prong of Strickland. With the trial counsel's ineffectiveness for failure to call MM as a witness, prejudice Seagraves such that there is a reasonable probability the result of the trial would have differed had he received proper assistance. Your Honor, we are not asking this court to adopt a new law or new legal concepts. Rather, our argument today is twofold. Under the AEDPA, otherwise known as EDPA, as I will be referring to it, the superior court's failure to presume prejudice concerning failure to call a critical witness, a standard recognized by cases in other federal circuit courts and Strickland analyses, is an objectively unreasonable application of Strickland. Counselor, can you point to any Supreme Court precedent in which the court expressly states that prejudice is to be presumed in cases factually similar to yours? Yes, Your Honor. The standard for clearly established law for Supreme Court cases is established in the case of Knowles. And in the case of Knowles, the Supreme Court says that clearly established law refers to cases that are akin to. And Your Honor, I would argue that this case, presumed prejudice, the concept of presumed witness, was first established, or at least the earliest that we have cited today was in 1974 in Davis v. Alaska. And in Davis v. Alaska, the Supreme Court found that failure to meaningfully cross-examine a witness was a constitutional error of extreme magnitude, and no curing or want of prejudice would cure it. And Your Honor, I would argue that failure to meaningfully cross-examine a witness is similar to, or akin to, the witness never being called at all, and thus falls within. Did you cite those cases? Yes, Your Honor, in our reply brief. In a reply brief? Yes. You did? Okay. And so we first have Davis v. Alaska, which establishes a concept of presumed prejudice within the context of the Sixth Amendment. And then again, that decision was relatively affirmed by a following decision in Garza v. Idaho by the Supreme Court, where prejudice was allowed to be presumed in certain Strickland circumstances whenever counsel fails to subject the prosecution's case to meaningful adversarial testing. So these are two cases, Your Honor, where the Supreme Court says prejudice may be presumed for purposes of the Sixth Amendment and then for purposes of Strickland. Additionally, Your Honor, outside of presumed prejudice, we are arguing that there is a second violation as well under ADPA. The Superior Court failed to properly weigh the evidence when assessing the prejudice prong of Strickland, and this was an unreasonable determination of the facts, as well as contrary to and objectively unreasonable under Strickland. I just want to ask you this question. You never, in your opening brief, you never cited any aspects of ADPA, did you? That is true, Your Honor. Okay. But you did mention ADPA in your reply brief? Yes. However, Your Honor, I would like to note that all of the cases we did cite in our opening brief were all subject to ADPA, and they were all subject to those procedural demands and deference that were required. Okay. And you understand the double deference that we owe here to the decision, the decision of the Superior Court which we're reviewing? Yes, Your Honor. Okay. For purposes of today's discussion, I will be referring to MM as a critical witness, and the term critical witness is something that we have coined in an effort to consolidate repeating circumstances and factors that have been seen in Federal Circuit cases that have applied presumed prejudice in the event of a critical witness within a Strickland analysis, specifically within the prejudice prong. These factors established by the Federal Circuit cases can be boiled down to three or four characteristics. There is a lack of eyewitnesses, there is a lack of physical evidence, and the uncalled witness, the critical witness, would have directly contradicted the testimony of the complainant as to an issue of fact and would have furthered trial counsel's narrative and trial strategy. All of these factors, Your Honor, are present within our instant case. BH is the sole eyewitness to her allegations. For physical evidence, Dr. Lewis's examination was, as admitted by Dr. Lewis herself, hinged entirely on the credibility of BH's testimony at the beginning of her examination, and MM as a critical witness would have directly impeached the testimony of BH at that trial. And furthered the narrative that BH was lying about these allegations to begin with. And so we have a critical witness, MM, and the existence of this critical witness creates a presumption of prejudice for purposes of Strickland. Circuit courts, when analyzing the prejudice prong of Strickland for failure to call a critical witness, exactly like this case, have done one of two things. They have either explicitly acknowledged the standard of presumed prejudice, for example, in the Fifth Circuit in Harrison v. Quarterman. Verbatim, the court said that it was joining its sister circuits by holding that counsel prejudices his client's defense when he fails to call a witness who is central to establishing the defense's theory of the case. And if the circuit court is not explicitly acknowledging the standard, the court mirrors the initial language of Davis v. Alaska, the Supreme Court case that held prejudice may be presumed in a Sixth Amendment context. For example, in the Second Circuit in Pavel v. Hollins, the court held that failure to call a witness was an error of extreme magnitude. Again, exactly mirroring the language that was in Davis v. Alaska. Your Honors, the Commonwealth argues that presumed prejudice within a Sixth Amendment context is novel law and violates the limitations of AEDPA. However, as I noted earlier, all of these cases were subject to the required deference of AEDPA at the time they were decided. Most notably, in the Ninth Circuit, Kennedy v. Adams is a very factually analogous case to what you have before you today. There were allegations of sexual assault on behalf of the complainant, the stepdaughter, and the conviction rested entirely on her testimony. The Ninth Circuit held in a case such as this that in a he said, she said case, it would have been objectively unreasonable for the court not to acknowledge that both outcomes, that is, a difference in the outcome of the trial, had a reasonable probability of occurring had the critical witness been called. Clearly based on this language, the Ninth Circuit was applying a standard of presumed prejudice within the required lens of AEDPA and the court's failure to find prejudice for failure to call such a critical witness was objectively unreasonable and an objectively unreasonable application of Strickland. Doesn't Harrington v. Ricker say that there must be, we must find that the likelihood of a different result must be substantial if the error had not been committed? I'm not familiar with that case, Your Honor. I'm not familiar with that case, Your Honor. However, an objectively unreasonable application of federal law and results in, I'm sorry, let me take a pause. However, under AEDPA, a reasonable probability to undermine the outcome is sufficient, but the outcome would have differed and that is the standard for a Strickland analysis and AEDPA just requires that the application of federal law be objectively unreasonable. What's the difference between the application of federal law being incorrect versus objectively unreasonable? So it is not enough that an application of federal law be incorrect. However, an objectively unreasonable application would be one that directly is contrary to the application of federal law. As determined by the Supreme Court? Yes, Your Honor. Has the Supreme Court adopted the factors that you identified in the several circuit court decisions? The Supreme Court has not verbatim adopted the exact circumstances that create a critical witness or adopted verbatim what we are arguing today. However, the Supreme Court takes on very few cases and the standard for clearly established law, as I mentioned, per nulls, is simply that the case has to be akin to or within the scope of. And I would argue, Your Honor, that this is within the scope of law Davis versus Alaska that was established by the Supreme Court. Additionally, Your Honor, I'd like to discuss the Superior Court's failure to properly weigh the evidence when assessing the prejudice prong of Strickland. All of the times the Superior Court cites to the original sentencing hearing saying that the evidence was overwhelming occurs on page three, page 10 and page 12 of the Superior Court opinion. However, the phrase overwhelming evidence in the sentencing hearing was coined and said by Judge Lavecchio, the same judge who presided over the PCRA hearing in which Judge Lavecchio stated this was not a slam dunk case. And this was upon learning that counsel had failed to call M.M. as a witness. Judge Lavecchio said that there was very little to no physical evidence and that the entire conviction was determined and dependent on the credibility of B.H., the complainant herself. And while this is fully within the record and Judge Lavecchio's statement that this case is no longer overwhelming evidence now that he has been made aware that counsel failed to call M.M., the Superior Court ignores this fact. The Superior Court instead cites to the sentencing hearing as evidence of weighing the evidence as part of their weighing of the evidence. And then the Superior Court goes on to cite evidence that is also dependent on B.H.'s credibility as a witness. Can we go back to the legal issue for a minute? Yes. In your research, did you come across any cases where the failure to call a witness nevertheless passed judicial scrutiny under Strickland and AEDPA? No, Your Honor. In other words, is it always prejudicial and an unreasonable application of federal law? No, Your Honor. We are arguing that this is a very narrow set of circumstances. You have a sexual assault case in which these three factors concerning a critical witness are met. So again, lack of eyewitnesses, a lack of physical evidence, and the uncalled witness would have directly contradicted the complainant's testimony as to an issue of fact. If those circumstances are met and this is a sexual assault case, over and over, the if not at minimum heightened scrutiny when analyzing the second prong of Strickland. This is very narrow. This is not any time a witness is uncalled. Remind us how the test that you're proposing lines up with Davis. I don't remember reading about Davis in the briefs, but maybe you can illuminate us. Yes, Your Honor. Davis concerned a case where counsel was not allowed to cross-examine a witness at length. They were denied that opportunity. And the court in Davis held that failure to cross-examine a witness was a constitutional error of extreme magnitude and no amount of showing of want of prejudice would cure it. And I would argue, Your Honor, because the standard is that the established law must be akin to the case before you today. What was the crime in Davis? Was it a sexual assault? I believe concerned a juvenile witness that counsel wanted to cross-examine about their probationary record, and they were denied that opportunity by the court. Are you talking about Statton versus Davis? No, Your Honor. Davis versus Alaska, a 1974 case. I don't like Judge Porter. I don't remember your discussion of Davis, and I just happened to look at the blue brief and the gray brief, and I don't see Davis versus Alaska cited in there, at least not in the table of contents or a summary of cases. I can check back with my notes, Your Honor, and I can give you a copy if possible. If it's not included in your briefs, in your table of authorities, and it's not cited, you should submit that case to us in a subsequent submittal. Yes, Your Honor. I will check our reply brief and see perhaps if it was in there and we missed citing it in our table of contents, and if not, I will move to submit the case. Thank you. We'll hear from Mr. Wade. Good morning. Martin Wade. I'm a prosecutor in the District Attorney's Office in Williamstown, Pennsylvania. It is an honor to be here. I greatly appreciate the opportunity. I think the standard for ineffective assistance review in the federal courts is the same in every case. I think it's the Strickland test, and the prejudice analysis changes from case to case. In the cases that she mentioned where they found extreme prejudice enough to reverse a decision, it was because it was a grievous error such that the probability of a different outcome had that error not been made was manifest. It was clear, such as the example of the failing or being deprived of the opportunity to cross examine a witness. That was a big deal. And so in those situations, the potential prejudice is so great and the denial is so extreme that certainly they found that the prejudice standard of Strickland was met, but it's a case-by-case analysis. And in the cases from the circuit courts, not this court, but from the various circuit courts where the factors are laid out, the factor in those cases which is not present in our case is the lack of physical evidence. The physical evidence in this case was devastating for the defense. It was downright devastating. If you read the trial transcript, she literally said that this injury was the result of penetrating trauma consistent with the victim's testimony, which was repeated sexual assault at the hands of her stepfather. There was no other medical explanation, even though counsel tried on cross-examination. So the physical evidence in this case was compelling and very well may have been the reason why the verdict came out the way it did. And so the notion that an 11-year-old girl's memory of a noisy school bus ride could overcome physical evidence that strong, I think is unlikely. I think there's a faint possibility the outcome could have been different, but not a reasonable probability. I think a faint possibility falls well short of the reasonable probability standard. In the Green case that we studied in our brief, the court noted that the ADPA is designed to guard against extreme malfunctions in the state criminal justice system. I don't think we can reasonably say that what the Superior Court did in this case was an extreme malfunction. We can have differences of opinion about the result they reached and the correctness of the result. But, you know, in the very beginning of counsel's argument, she said, we're here to dispute the erroneous decision of the district court. Well, the district court said the Superior Court's decision was not erroneous, but even if it was, that's not enough for this court to grant the petition. It has to be objectively unreasonable in the way they treated the law. And I don't think counsel has demonstrated in the brief, and I don't think the record proves by clear and convincing evidence, which is the standard, that. For our purposes, the district court's decision was unreasonable if it was contrary to clearly established federal law. What do you say about that? I say it's not. There's no precedent that counsel's been able to cite that's analogous to this case. What about Davis? Davis's failure to cross-examine a witness that got called at trial. It's a completely different set of circumstances. Are you familiar with the case, the 2014 opinion written by Judge Greenberg of our court, of Branch v. Sweeney? No. You're not? I am not. I'm surprised that both sides missed that case. That case involved the failure to call two witnesses at 758 Fed Third 226. And in that case, our court found that it was prejudicial under Strickland. It was a habeas case. You may want to take a look at that and submit your comments subsequent to argument, both of you. I would agree that in the case of a critical witness, certainly there have been cases where they found prejudice. But this is not a critical witness. And that's, I think, another way that their cases are distinguished is not a critical witness at all. How old was MM during the trial of this? In other words, how many years removed was the trial from the bus ride? The bus ride would have been in approximately 2006. The jury trial was in 2011. So five or so years removed. So she would have been 16 or 17 at the time of trial, same age as the victim. The question I have for you, first of all, on these rape charges, there was a hung jury the first time. And the second time the jury was out, I'm going to call it a fair amount of time, at least enough time to come back. I asked some questions to the judge about the testimony of the aunt and testimony of one of the other witnesses. Is the length of jury deliberations something we're allowed to consider in determining the closeness of the verdict? I would say it's a really bad idea, Your Honor, just because nobody knows what goes on in that room. And you can have a single holdout that can hold up a verdict for hours, if not days. So I think it would be extremely unwise to do so. I certainly abstain from doing that. You don't know of any case that looks at the time juries pondered a case in determining the closeness of the evidence? I am not familiar with any such determinations, Judge. It's a good question. All right. What if there were a solid wall of circuit authority using these factors in sexual assault cases? Would that get us to clearly establish federal law? No, I think the Supreme Court has to speak on the matter. I mean, you would have a split at that point. My understanding is it has to be clearly established U.S. Supreme Court law. I'm still green. Okay. Did you have more? Sure. Just something else to point out. To the extent that the Superior Court was defective, I think they were defective in not citing more facts that weighed in favor of their decision, such as something we pointed out at the PCRA hearing, which was that it actually came out during the trial. The exact information that they wanted to get out of this witness came out during trial through the lead investigator. Specifically, she indicated that the child disclosed to no one else other than her aunt prior to coming to the police, which is exactly what this missing witness would have testified to. So that was one thing we pointed out. I don't think the District Court highlighted it, or the Superior Court, but that was something that was significant at the PCRA hearing. Like you said, this information was missing from the trial. It wasn't missing. It's right there. It came out of the lead investigator's mouth. A Commonwealth witness. And so, you know. But yeah, I would urge the Court to take a look at that trial transcript if you have time. Okay. Thank you. We'll hear from Ms. Spetak on rebuttal. Thank you, Your Honor. May it please the Court. I would like to focus on Dr. Lewis's examination of the physical evidence. Her examination showed a cleft hymen. There was no direct showing of what caused this cleft hymen. She could not even confirm that it was the result of penetration from a penis. She was only able to confirm that the cleft hymen existed and unable to say where or what exactly caused this injury. And when Defense Counsel questioned her and said, let's throw away the testimony of the complainant, B.H., what would your conclusion be? Dr. Lewis was unable to reach a conclusion. In fact, she said, these two things, my examination and the testimony of B.H., go hand in hand. Verbatim, that is the wording that she said. And so she was unable to separate her examination from the credibility of the complainant, making her physical examination relatively moot without the jury being able to properly determine the credibility of the complainant. Furthermore, B.H. was very specific in her testimony about who she told first, her best friend, M.M., the uncalled critical witness on the school bus. M.M.'s testimony was not that she doesn't remember. M.M.'s testimony was that B.H. never disclosed these allegations to her. M.M. does concede at the PCRA hearing that perhaps the bus was loud, but this is not the same as I don't remember. This is, she never said this to me, and perhaps the bus was loud. And I would like to highlight, Your Honor, that when it comes to your question earlier about considering whether or not we should take into account the jury's struggle with reaching a verdict, I would argue that the Superior Court clearly did whenever they were weighing the evidence of the case. They said the jury obviously believed B.H. In dissent. No, the Superior Court found that even though the jury struggled with the verdict, they clearly agreed, which I would argue, Your Honor, is untrue. Additionally, there were no other facts of the evidence that the Superior Court could have cited to concerning their analysis of the evidence. All of the evidence was determined by B.H.'s credibility as a complainant. And finally, as a last note, Your Honors, I would like to note that I did check our reply brief, and though Davis is not in the table of contents, it is on page 7 of our reply brief. And additionally, I will look into the Branch case, and with your permission, I would like to submit a supplementary letter pursuant to Rule 28J. Thank you so much. Thank you. Thank you to the Federal Allegation Clinic for its work on this case, and I will take it under advisement.